**In re CONSORTO CONST. CO., Inc.**
**No. 11216.**

United States Court of Appeals,
Third Circuit.

Argued Feb. 1, 1954.

Decided May 3, 1954.

Robert E. Jones, Philadelphia, Pa. (Rawle & Henderson, Thomas F. Mount, Joseph W. Henderson, Philadelphia, Pa., on the brief), for appellant.

Nathan Lavine, Philadelphia, Pa. (Edward H. Cushman, Alexander B. Adelman, Philadelphia, Pa., on the brief), for appellee.

Before GOODRICH, McLAUGHLIN and HASTIE, Circuit Judges.

HASTIE, Circuit Judge.

In February 1951 Consorto Construction Company, the bankrupt, borrowed money from Equity, the appellant in this action. On March 9, 1951, as security for the loan, Consorto executed and delivered to Equity its bond, warrant, and chattel mortgage covering specified personal property. All of this happened in Pennsylvania. The chattel mortgage was executed in accordance with the 1945 Pennsylvania Chattel Mortgage Act,[1] but it was not recorded until August 3, 1951. More than four months after the recording Consorto was adjudicated bankrupt.

Averring title to the mortgaged chattels, appellant filed a reclamation petition demanding that the receiver surrender possession of them. The receiver resisted the petition. It was agreed, however, that the property be sold and the proceeds held by the receivers subject to final determination of appellant's right under the reclamation petition. Upon hearing before the referee counsel stipulated all the above facts and, in addition, that between the date of execution and date of recording of the mortgage certain persons had become unsecured creditors of the bankrupt, and a United States tax lien and a Pennsylvania lien for unpaid corporation taxes had been entered of record against the bankrupt.

The trustee opposed the reclamation petition on the ground that the delay in recordation made the mortgage void against him. The referee dismissed the

1. 21 P.S. §§ 940.1–940.16, more recently repealed and superseded by the Uniform Commercial Code, as enacted April 6, 1953, P.L. 3, 12A PS. § 1–101 et seq.

petition on that ground. The district court sustained the referee. Equity, the chattel mortgagee, appealed.

In order for the trustee to prevail, he must invoke either Section 70, sub. c or 70, sub. e of the Bankruptcy Act, 11 U. S.C.A. § 110, sub. c or 11 U.S.C.A. § 110, sub. e. Neither Section 60 nor Section 67 is applicable because bankruptcy occurred more than four months after the filing of the instrument.

 Section 70, sub. c provides in relevant part:

"* * * The trustee, as to all property of the bankrupt at the date of bankruptcy * * * shall be deemed vested as of the date of bankruptcy with all the rights, remedies, and powers of a creditor then holding a lien thereon by legal or equitable proceedings, whether or not such a creditor actually exists."

The trustee's rights under this Section are not derivative. They are not rights of any existing creditor to which the trustee is subrogated but are independent rights, of such character as a described hypothetical creditor would have enjoyed, created by the Bankruptcy Act itself. In this case the trustee's rights against the mortgagee under Section 70, sub. c are those which Pennsylvania law would give such a creditor as Section 70, sub. c describes, with a lien created as of the date of bankruptcy.

The mortgagee bases its claim on the following provision of the Pennsylvania Chattel Mortgage Act:

"Any chattel mortgage executed pursuant to this act shall be a lien upon the property therein described, which lien shall be good and valid against and superior to all rights of subsequent purchasers, subsequent mortgagees and other subsequent lienors and encumbrancers, and all persons subsequently dealing with the mortgaged property or subsequently acquiring an interest there-in from the time of filing of the mortgage * * *." 21 P.S. § 940.5.

If the mortgagee here proceeded in such a way as to obtain the full protection of the quoted provision, the subsequent lien of the trustee under Section 70, sub. c is the subordinate lien. This is not disputed. But it is argued that the chattel mortgagee's claim is not protected by the Pennsylvania Chattel Mortgage Act solely[2] because of the tardy recordation of the instrument.

 The Pennsylvania Act states no time within which recordation must be effected. Here nearly five months elapsed between the execution and the filing of the mortgage. No Pennsylvania case has considered the effect of such delayed recording. Therefore, without guidance from Pennsylvania courts, we construe the statute in a manner we believe reasonable and consistent with the best considered judicial construction of other similar chattel mortgage statutes.

Before 1931, the Illinois chattel mortgage statute made no provision as to time within which recordation was required. This was judicially construed to mean that a chattel mortgage could be recorded at any time after execution and still be a valid lien as against rights thereafter acquired by third persons. The only risk of tardy filing was that some third person might acquire a lien on the chattel prior to the time the mortgagee perfected his lien by recordation. See Collateral Finance Co. v. Braud, 1939, 298 Ill.App. 130, 18 N.E.2d 392, 394. A similar construction was given to an early Rhode Island statute which provided no time for recording. Commercial Nat. Bank v. Colton, 1891, 17 R.I. 226, 21 A. 349. See also discussion and cases cited in Barber v. Reina Nash Motor Co., Wyo., 1953, 260 P.2d 928, 931–932.

We are urged to adopt the contrary construction of the Missouri statute

---

2. Under the Pennsylvania statute the fact that a chattel mortgage is given for a pre-existing debt does not make the rec-orded security transaction any less effective. 21 P.S. § 940.4.

which has been held to make recording ineffective, unless accomplished within a "reasonable time" after execution, even though no time is specified in the act. But the Missouri courts have also construed their statute to make the lien which is acquired upon timely recording effective retroactively to the time of execution of the instrument. The Pennsylvania Act on the other hand states in explicit terms, and it has been judicially recognized, that the chattel mortgage becomes a lien only from the time of filing. Ferbro Trading Corp. v. Jo-Mar Dress Corp., 1951, 78 Pa.Dist. & Co. R. 337, 343. This distinction is significant. To allow a chattel mortgagee to delay recording as long as he may choose and still obtain priority as of the day of execution over a subsequent lienor who in the meantime has perfected his lien without knowledge of the chattel mortgagee's unperfected lien would be manifestly unfair. Therefore, where, as under the Missouri Act, recording relates the lien back to the date of execution, prompt recording must be required in order to avoid this injustice. But the absence of this relation back under the Pennsylvania Act prevents this problem of injustice from arising, whether recording be prompt or delayed. For only the subsequent lienor who has notice of the chattel mortgage through its recording is subordinated.

■ There are other statutes, notably those of California and New Jersey, which state no time for recording yet are construed to require immediate recording in order for the instrument to be valid even though they do not, like the Missouri statute, relate the lien back to the execution date. Ruggles v. Cannedy, 1898, 127 Cal. 290, 53 P. 911, 59 P. 827, 46 L.R.A. 371; Roe v. Meding, 1895, 53 N.J.Eq. 350, 30 A. 587, 33 A. 394. Courts which adopt this construction seem to be persuaded that there is a danger of imposition on unsecured creditors of the mortgagor if a delayed filing is held to create a lien even from the time of recordation. But the same result can be obtained merely by re-executing the old unrecorded mortgage and recording this "new" instrument at once. It seems worthless formalism to require such re-execution of the old instrument as a basis for effective recordation. We think that a chattel mortgage while unrecorded can be fairly recognized as having a potential like a pledge, originally ineffective for failure to deliver possession. In the latter situation, a subsequent delivery will generally perfect the pledge except as to bona fide purchasers or creditors who have acquired liens prior thereto. Brown, Personal Property, § 128. Under the 1945 Pennsylvania Chattel Mortgage Act, we believe it to be the proper construction that a tardy recording will perfect the lien of a chattel mortgagee as of the date of recordation.

■ Here the chattel mortgagee obtained a lien August 3, the date of recording. Anyone subsequently obtaining an interest in or claim against the property was subordinated to that lien. Under Section 70, sub. c the trustee's position is that of such a subsequent lienor, "holding a lien * * * by legal or equitable proceedings" as of the date of bankruptcy, a time more than four months after Equity perfected its mortgage lien.

■ The trustee is in no better position under Section 70, sub. e which provides:

"A[n] * * * obligation incurred by a debtor adjudged a bankrupt under this Act which, under any Federal or State law applicable thereto, is fraudulent as against or voidable for any other reason by any creditor of the debtor, having a claim provable under this Act, shall be null and void as against the trustee of such debtor."

Under this subdivision the trustee is subrogated to the rights of existing creditors as to whom the obligations of the bankrupt are voidable.

■ Under the common law of Pennsylvania chattel mortgages were viewed with disfavor. Any such attempt to mortgage personalty which was left in the possession of the mortgagor did not give the mortgagee any lien or legal priority over other creditors. Roberts' & Pyne's Appeal, 1869, 60 Pa. 400; Rowland v. Clark, 1915, 250 Pa. 192, 95 A. 451. This background considered, the Pennsylvania courts have rather clearly indicated their view that the limited effect of the 1945 Chattel Mortgage Act has been to create a new statutory lien which attaches only when a chattel mortgage is filed as prescribed by the statute. Seaboard Consumer Discount Co. v. Landau's, Inc., 1950, 167 Pa.Super. 180, 74 A.2d 737; Ferbro Trading Corp. v. Ja-Mor Dress Corp., supra. Until that time the mortgagee has no lien status upon which to predicate priority over any other creditors.[3] But from the time of recording the mortgagee acquires a lien valid against all general creditors and senior to liens which attach thereafter.

■ For present purposes the significance of the foregoing analysis is this. The basic obligation which made Equity a creditor of the bankrupt is of course valid and unchallenged. The lienor's subsequent course of action to acquire security in the form of the lien of a chattel mortgage culminated and became effective for the first time when the instrument was recorded. Any other lien perfected before that time prevails not under any concept that the lien of the chattel mortgage is voidable, but by reason of priority in time. General creditors who gave credit either before or after the execution of the mortgage are subordinated because such is the character and effect of the Pennsylvania statute which recognizes the recording of a chattel mortgage, though given for an antecedent debt, as creating a statutory lien valid against all but prior lienors. Of course, in certain circumstances, the acquisition of such priority may amount to a preference which can be invalidated by bankruptcy proceedings at any time during the ensuing four months. Indeed, this is the normal way in which the unsecured creditor protects himself against the creation of such liens by a debtor who cannot meet all of his obligations. We are not impressed by an argument of appellee that a creditor would not regard a tardy recording as a preference against which he must protect himself by appropriate proceedings if the debtor should become insolvent. A creditor who learns of a tardily recorded chattel mortgage and acts without counsel has no reason to be assured that such an apparently regular instrument is legally ineffective. On the other hand, counsel confronted with such a situation would know that the 1945 statute and decisions under it are silent on the required time of recording, and that views in other states are conflicting. Certainly, counsel for a creditor concerned about preferences would not advise his client that a tardily recorded Pennsylvania mortgage could safely be disregarded. In sum, the creditor has full and fair notice and opportunity to protect himself against any preference created by a tardy recording of a chattel mortgage.

We see no basis for saying that the obligation to Equity or the transaction whereby it acquired security was voidable as to any creditor within the meaning of Section 70, sub. e.

The judgment will be reversed.

McLAUGHLIN, Circuit Judge (dissenting).

I would affirm the order of the district court for the reasons stated in the excellent opinion of Referee Deininger.

3. Of course this does not prevent the mortgagee from using the instrument executed by the mortgagor as a basis for asserting a claim to the goods which will be good against the mortgagor or another standing in his shoes. First National Bank of McAdoo v. Reese, 1947, 356 Pa. 175, 51 A.2d 806.